## GRIDER ET AL. v. SCHARF

[No. 28,285. Filed May 26, 1947. Rehearing Denied June 24, 1947.]

*Albert H. Gavit, Richard S. Kaplan,* both of Gary, and *George F. Sammons,* of Kentland, for appellants.

*Jay E. Darlington,* of Hammond, for appellee.

YOUNG, J.—It appears, without contradiction from the record in this case, that prior to the infliction of the injuries complained of, Local Union 1066 of United Steel Workers of America had ordered a "dues inspection" of its members employed in the Carnegie-Illinois Steel Mill at Gary. A dues inspection, as it was conducted in this case, involves the stopping of employees on their way to work for the purpose of determining whether they are members of the union, and, if so, whether their dues have been paid. Upon the morning appellee was injured, there was evidence that four or five hundred union members congregated on a public highway near the entrance of the steel mill and stopped public buses and private autos containing employees going to work, and those who did not have cards showing union dues paid were turned back. The procedure adopted was for union representatives to require buses carrying employes to the steel mill entrance to stop and to require all passengers to disembark and then permit those thought to be qualified to go ahead and turn back those not thought to be qualified.

Appellee, an employee, was not a union member. Her testimony and that of her witnesses was to the effect that she went to work on the morning in question in a public conveyance operated by the Gary street railway system and when the bus, in which she was riding, approached the entrance to the steel mill it was stopped. All passengers were ordered to get out by union representatives directing the "dues inspection." Mrs. Scharf refused to obey, whereupon the appellant, Grider, in-

structed two co-appellants, who were his assistants, to "get that old sow out of there". They grabbed her and by violence moved her to the exit. At the steps appellant Grider grabbed her by the leg, about eight inches above the knee, and pulled her off the bus. She filed suit against the Local Union and the National Union and a number of others, including Grider, and those who had actually evicted her from the bus, for compensatory damages and also punitive damages. It was stipulated that appellant, Frank Grider, was in charge of the picketing and pickets at the time and place described in plaintiff's complaint, and, in directing such picketing and pickets, was acting as the duly authorized agent and representative of Local Union No. 1066 of United Steel Workers of America, and United Steel Workers of America, and was acting within the scope of his authority and in the regular course of his employment as such agent and representative.

There was a trial and verdict for the plaintiff, for both compensatory and punitive damages and immediately upon return of such verdict counsel for appellants made an oral motion in arrest of judgment, which motion was overruled. Later a motion to withdraw the motion in arrest of judgment and a motion for a new trial were filed and each was overruled. Appeal was taken to the Indiana Appellate Court. The Appellate Court wrote an opinion in which it stated that the substantial questions in the case arise under appellants' motion for a new trial, but that under ruling precedents in this state questions raised by the motion for a new trial could not be considered because a motion in arrest of judgment forecloses the right to file a motion for a new trial. The Appellate Court expressed the opinion that the cases establishing the rule that a motion in arrest of judgment precludes the later filing of a motion

.for a new trial, except for causes discovered afterward, should be overruled, and they certified the case to us pursuant to § 4-215, First, Burns' 1946 Replacement.

We are, therefore, confronted with the propriety of overruling a long line of cases which prevailed when the case before us was tried, thereby retroactively changing a well established rule of practice and procedure, in order that appellees may present alleged error, which will not be available to them unless such cases are overruled and such rule is changed.

Continuously, and without exception, in a long line of cases this court since 1850, and the Appellate Court since its establishment, have recognized motions in arrest of judgment as a part of our practice and have held that the filing of a motion in arrest cuts off the right to file a motion for a new trial and that a motion for a new trial filed after a motion in arrest presents nothing for consideration. *Mason* v. *Palmerton* (1850), 2 Ind. 117, 120; *Rogers* v. *Maxwell* (1853), 4 Ind. 243, 245; *Bepley* v. *State* (1853), 4 Ind. 264, 265; *Sherry* v. *Ewell* (1853), 4 Ind. 652; *Smith* v. *Porter* (1854), 5 Ind. 429; *Hord* v. *Noblesville* (1854), 6 Ind. 55; *Van Pelt* v. *Corwine* (1855), 6 Ind. 363, 364; *McKinney* v. *Springer* (1855), 6 Ind. 453, 454; *Doe* v. *Clark* (1855), 6 Ind. 466, 467; *Marion, etc., R. Co.* v. *Lomax* (1856), 7 Ind. 406; *Weathered* v. *Bray* (1856), 7 Ind. 706; *Anthony* v. *Lewis* (1856), 8 Ind. 339; *Bates* v. *Reiskenhianzer* (1857), 9 Ind. 178; *Shrewsbury* v. *Smith* (1859), 12 Ind. 317; *Daily* v. *Nuttman* (1860), 14 Ind. 339, 340; *Cincinnati, etc., R. Co.* v. *Case* (1889), 122 Ind. 310, 316, 23 N. E. 797; *Eckert* v. *Binkley* (1893), 134 Ind. 614, 616, 33 N. E. 619, 34 N. E. 441; *Yazel* v. *State* (1908), 170 Ind. 535, 539, 84 N. E. 972; *Kelley* v. *Bell* (1909), 172 Ind. 590, 595, 88 N. E. 58; *Turner* v. *State* (1910), 175 Ind. 1, 3, 93 N. E. 225; *Conant* v.

*First National Bank* (1917), 186 Ind. 569, 572, 117 N. E. 607; *Phillips* v. *Gammon* (1919), 188 Ind. 497, 499, 124 N. E. 699; *Anderson* v. *State* (1924), 195 Ind. 329, 333, 145 N. E. 311; *Kirschbaum* v. *State* (1925), 196 Ind. 512, 519, 149 N. E. 77; *School City of Noblesville* v. *Heinzman* (1895), 13 Ind. App. 195, 197, 41 N. E. 464; *Wheeler* v. *Rohrer* (1899), 21 Ind. App. 477, 483, 52 N. E. 780; *Willard* v. *Alberson* (1899), 23 Ind. App. 166, 167, 53 N. E. 1078; *New Hampshire Fire Ins. Co.* v. *Wall* (1905), 36 Ind. App. 238, 243, 75 N. E. 668; *New Albany etc., Mills Co.* v. *Senior* (1913), 53 Ind. App. 453, 456, 101 N. E. 1025; *Treloar* v. *Harris* (1917), 65 Ind. App. 22, 116 N. E. 590; *Strecker* v. *Strecker* (1926), 86 Ind. App. 16, 19, 154 N. E. 503; *Wright* v. *Watkins* (1928), 86 Ind. App. 695, 699, 159 N. E. 761; *Cassell* v. *Cochran* (1943), 114 Ind. App. 115, 50 N. E. (2d) 668. Typical of these cases is the language used by Judge Lairy in *Conant* v. *First Natl. Bank, supra:*

> "The assignment that the court erred in overruling appellant's motion for a new trial presents no question for the reason that the right to file such a motion was waived by previously filing a motion in arrest of judgment. It has been uniformly held by this court that a motion in arrest of judgment cuts off the right to subsequently file a motion for new trial, except only where the grounds of the motion for a new trial were unknown at the time the motion in arrest was made."

Appellants contend (1) that no good reason sustains this rule, and (2) that since passage of ch. 157 of the Acts of 1911, (§ 2-1007, Burns' 1946 Replacement) all grounds for arrest of judgment, not raised by demurrer, are waived.

As disclosed by the opinions in the early cases establishing the rule complained of, the reason for it was that by filing a motion in arrest of judgment on a verdict or

finding, the party in effect affirmed the verdict or finding and was not thereafter in position to attack them by a motion for a new trial. *McKinney* v. *Springer, supra; Shrewsbury* v. *Smith, supra.* In *Van Pelt* v. *Corwine, supra,* the reason for the rule is stated in the following language: "The motion in arrest of judgment was an affirmance of the verdict upon the evidence and we shall not, therefore, look into that. The motion for a new trial was too late to be noticed." This reason for the rule is as sound today as it was when first put in words by this court, and the act of 1911, providing waiver of all insufficiencies in the complaint not pointed out on demurrer is without meaning so far as the rule cutting off motions for a new trial by motions in arrest is concerned. At most the waiver rule, prescribed by the act, could do no more than afford grounds for overruling the motion in arrest if the ground for such motion in arrest was the insufficiency of the complaint.

This is not the first time that either of appellants' contentions has been urged upon this and the Appellate Court. In *Cincinnati, etc., R. Co.* v. *Case, supra,* a motion in arrest of judgment preceded a motion for a new trial and it was held that the motion for a new trial could not for that reason, be considered, and in this connection the following language appeared:

> "It is claimed by the appellant that no good reason can be given for the rule established by these numerous cases, and that, therefore, they should be overruled. But it must not be forgotten that they establish a rule of practice which has prevailed in this State for many years, well understood by the profession. A rule so firmly established and so well understood as this should not be disturbed, except for some strong reason. The rule can work no hardship, as a party may, after a motion for a new trial, move in arrest of judgment and thus secure the benefit of both motions. We

know of no good reason why this long list of cases should be overruled. . . ."

It so happens that the identical question primarily involved in the case before us was involved in the case of *Cassell* v. *Cochran, supra,* decided by the Appellate Court late in 1943. In that case a motion in arrest of judgment was filed prior to the filing of a motion for a new trial, and the Appellate Court held categorically and without question that under such circumstances the motion for a new trial presented nothing. At the time that case was decided, four members of the present Appellate Court were members of the court. We have examined the briefs in that case and find that there, as here, it was urged that the rule cutting off a motion for a new trial after a motion in arrest should be repudiated, and for much the same reasons as urged here. It was contended then, as now, that the motion in arrest of judgment was a mere nullity and presented no question for determination and, therefore, should not be made the basis for denial of appellants' right to file a motion for a new trial. There are no substantial differences in the questions presented to the Appellate Court in the two cases, yet in the Cassell case four of the same judges who, in the case before us, declined to follow the long line of cases cited, did not hesitate to follow those cases and reaffirm the rule they now criticize.

It also seems significant that in 1925 our General Assembly (Acts 1925, ch. 203, p. 490; § 9-2001, Burns' 1942 Replacement) changed the rule in criminal cases only and provided by statute that motions in arrest of judgment may be filed in certain specified contingencies, "and that such motions in arrest of judgment may be filed either before or after the motion for a new trial, and that the filing of such

motion shall not preclude the right of the defendant to subsequently file a motion for a new trial." At the time the legislature passed this act, it was, as appears from the cases cited above, thoroughly established that motions in arrest cut off the right to file a motion for a new trial in both civil and criminal cases. The legislature saw fit to change this situation in criminal cases only and thereby indicated its tacit approval of the rule as applied to civil cases. If the rule complained of were as unreasonable and baseless as is claimed by appellant the legislature would hardly have been content to change it only in criminal matters.

It seems to us that appellants are mistaken in the view they take of motions in arrest of judgment in Indiana. They proceed on the theory that the only function of such a motion is to test the sufficiency of a complaint. They argue that since the adoption of our code a complaint can be tested only by demurrer and that therefore, since then, a motion in arrest raises no question and is a nullity which should have no effect upon the right thereafter to file a motion for a new trial.

With this we disagree. Motions in arrest of judgment are of common law origin and may be based upon other grounds than the sufficiency of the complaint. Arrest of judgment is the method by which a court refuses to give judgment in a case, though it be regularly decided, where it appears on the face of the record, not including the evidence, either that intrinsically no cause of action exists, or that if judgment were rendered for the prevailing party it would be erroneous. *Pillsbury, etc., Co.* v. *Walsh* (1915), 60 Ind. App. 76, at pp. 88 and 89, and authorities cited, 110 N. E. 96. See also (49 C. J. S., p. 209, § 8). Power to arrest judgment is inherent in courts

of general common law jurisdiction. *Pillsbury, etc., Co.* v. *Walsh, supra,* at p. 88. It is true that in most of the cases the grounds for arrest of judgment is insufficiency of the complaint and a number of cases based upon this ground may have led to the mistaken idea that there is no other ground. Any error appearing on the face of the record which vitiates the proceeding is ground for arrest of judgment. *Boor* v. *Lowrey* (1885), 103 Ind. 468, 477, 3 N. E. 151; *Conant* v. *First Natl. Bank, supra.* Grounds other than the insufficiency of the complaint remain and the motion, as a whole, is not a nullity.

In *Boor, Admr.* v. *Lowrey, supra,* there was a motion in arrest which was not based on the sufficiency of the complaint. The action was for malpractice against two physicians practicing as partners. One of the partners died while the action was pending and his administrator was substituted. The first question presented was whether the action survived after the death of one of the partners as against his personal representative. Over objections of both defendants, the action was prosecuted to final judgment against the survivor and the estate of the one who had died. Apparently a motion in arrest of judgment was filed and this court held that it was error for the trial court to require the personal representative of the deceased partner to answer for the estate of his decedent. In discussing the situation, Judge Mitchell, speaking for the court, used the following language, on p. 477;

"After the death of Luther W. Hess was suggested on the record, the case stood to all intents and purposes in legal contemplation as a case against the surviving defendant alone. The proceedings thenceforth, so far as they treated the case as an action against two, were all erroneous, and the verdict having been returned against two,

> in an action to which in contemplation of law there was but one defendant, it was so radically defective as that no judgment could be pronounced upon it over a motion in arrest."

Following this language, Judge Mitchell said that a judgment should be arrested where there is such error appearing on the face of the record as vitiates the proceedings and held that upon the whole record in the case, including the verdict, no judgment could properly be rendered and that therefore the motion in arrest was well taken.

In *Conant* v. *First Natl. Bank, supra,* Judge Lairy said that "a motion in arrest of judgment must be based upon an error apparent upon the face of the record, which vitiates the proceedings," and he cited *Boor, Admr.,* v. *Lowrey, supra,* to sustain this statement of the law. These cases seem to establish that a judgment may be arrested for reasons other than the sufficiency of the complaint and that the 1911 act did not take the motion in arrest entirely out of our practice.

Also there is an exception to the rule that insufficiencies of a complaint not raised by demurrer are waived. Where the complaint shows that the court did not have jurisdiction of the subject matter that defect is not waived because it was not raised by demurrer (§ 2-1011, Burns' 1946 Replacement). So it follows that even under the waiver statutes there could still be reason appearing upon the face of the complaint which would not be waived by failure to demur, but could be raised by a motion in arrest.

That the motion in arrest of judgment has continued to be an integral part of our practice is further demonstrated by the fact that such motion has been filed in the many cases hereinbefore cited.

Appellants have also complained that the trial court erred in denying their request to withdraw the motion in arrest. In this connection it need only be said that it is not the action of the court upon the motion in arrest that is controlling but the act of the party in making the motion. Withdrawal of the motion in arrest would not alter the fact that it had been made. Appellants seem to have recognized this because their motion in this connection was that the motion in arrest of judgment, as well as the orders entered thereon, be stricken out, expunged, vacated, set aside and withdrawn *nunc pro tunc*. The purpose of a motion to change a record *nunc pro tunc* is to make the record speak the truth. In this case there is no question but that the motion in arrest of judgment was made and the record of its filing was true. No *nunc pro tunc* action would have been proper if its effect was to make the record show something not true. The motion in arrest was made. No contrary *nunc pro tunc* entry could change that fact. Withdrawal of the motion would not change the fact it had been made and it was the making that did the damage which withdrawal could not cure. Therefore, overruling the motion to withdraw, even if erroneous, was harmless.

All other alleged errors are raised by appellants upon their motion for a new trial, and because the motion for a new trial was filed after their motion in arrest of judgment, nothing is presented by the motion for a new trial.

No error being presented to us, the judgment is affirmed.

Gilkison, J., and Emmert, J., dissenting.

NOTE.—Reported in 73 N. E. (2d) 75.

## ON PETITION FOR REHEARING

YOUNG, J.—Appellants have filed a petition for rehearing in which they urge that we erred in refusing to change the long standing rule that a motion in arrest of judgment should bar a subsequent motion for a new trial. They have again failed to convince a majority of the Court. In the course of their comments they refer to *Boor, Administrator* v. *Lowrey* (1885), 103 Ind. 468, which was cited in the original opinion in this case. They assert that the Lowrey case in not persuasive because, notwithstanding there had been a motion in arrest of judgment, this court, in reversing the case, ordered a new trial. The record in the Lowrey case shows that there was a verdict; then followed a motion for a new trial, which was overruled; then followed a motion in arrest of judgment, which was overruled; and then followed final judgment from which the appeal was taken. A motion for a new trial having been filed before the motion in arrest, the ordering of a new trial upon the reversal of the case is not inconsistent with the rule that a motion in arrest cuts off a motion for a new trial.

Appellants assigned as error the action of the trial court in sustaining a demurrer to the plea in abatement of the appellant United Steel Workers of America. In their petition for a rehearing they point out that we failed to rule upon this assigned error and they say that they have a constitutional right to have this question ruled upon. With this we agree. The plea in abatement read as follows:

"Comes now defendant, United Steel Workers of America, an unincorporated organization, by their attorneys, David B. Rothstein, Blaz A. Lucas and John W. Wake, and appear specially for the purpose of questioning the jurisdiction of the court over this defendant and say:

1. That at the time the above entitled action was commenced, and continuously ever since, and at the present time, defendant is and was not a resident of the County of Lake, State of Indiana, but, at the time of the beginning of said suit and ever since said time, defendant has been, and still is, a resident of and with its principal office located in the City of Pittsburgh, County of Allegheny, State of Pennsylvania, and that it has a membership of approximately six hundred thousand (600,000) members throughout the United States of America.

2. This defendant further alleges that none of the persons sued by name in this cause as officers and/or members of the United Steel Workers of America, are administrative officials of the United Steel Workers of America or represent the interests of the membership of the same and are not authorized by this defendant to act as such, and that this defendant is not bound or liable by the acts or the conduct of any of the parties named and sued in the plaintiff's complaint.

3. Defendant further says, that none of the officers, agents, or members of this defendant, United Steel Workers of America, have been served with process by the Sheriff of Lake County or his deputies, and that this court has no jurisdiction over this defendant.

Wherefore, defendant prays that this action against them do abate and that they recover their costs herein and for all other proper relief."

In their points and authorities in their original brief appellants said that the plea in abatement brought to the attention of the court that the union was not suable as a legal entity. It will be observed that at no place in the plea in abatement was it alleged that the union was not a suable entity and no facts are alleged upon which it could be claimed that such a conclusion could be based, except the rather parenthetical reference to itself as an "unincorporated organization" in the introduction to the plea. The question of the suability is not presented,

but rather by implication the plea in abatement concedes that with proper service there could be jurisdiction over the United Steel Workers of America. The only ground for abatement presented to the Court by the plea was that there had been no proper service. It is only alleged that none of the persons sued by name as officers or members of the union are administrative officials or represent the interests of the membership and that none is authorized to act for or bind the union; and that none of the officers, agents or members of the United Steel Workers of America was served with process. Names of representatives who could have been made parties or who could have been served are not set out, nor is it alleged that there were no administrative officials who could have been made parties or that there were no officers, agents or members of the union who could have been served with process.

"A plea in abatement is a dilatory plea; it is construed with much greater strictness than an ordinary plea in bar; no intendments are taken in its favor. It must contain the utmost fullness and particularity in every respect, also the highest accuracy and precision, leaving nothing to be supplied by intendment on the one hand and no assumed special answer unobviated on the other hand. It is regarded with disfavor as having the effect of excluding the truth." *Dodgem Corp.* v. *D. D. Murphy Shows, Inc.* (1932), 96 Ind. App. 325, 331, and cases cited, 183 N. E. 699, 185 N. E. 169.

A plea in abatement must not only point out plaintiff's error, but must show him how it may be corrected, and furnish him with materials for avoiding the same mistake again, or, in technical language, it must give the plaintiff a better

writ. *Needham* v. *Wright* (1894), 140 Ind. 190, at page 194; 39 N. E. 510; 41 Am. Jur. p. 377, § 127; 49 C. J. 237; Watson's Works Practice, Vol. 1, § 558. Under application of the foregoing rules, it seems clear to us that the Court was justified in sustaining the demurrer to the plea in abatement of the United Steel Workers of America. In asserting that this action on the demurrer was error they rely solely upon the proposition of suability of the union, whereas the plea in abatement did not present that question with the certainty and particularity required of such pleas. It presented only the question of service and failed to point out whether there were officers, agents, representatives or members of the union who could have been made parties or who properly could have been served.

Appellants contend that this court also failed to rule upon the proposition presented by them in their principal brief that on the entire record the trial court should upon its own motion have granted a new trial and that this court further erred in failing to search the record and order a new trial, notwithstanding that the motion for a new trial in the court below was barred by the preceding motion in arrest of judgment. For the trial court to have granted a new trial on its own motion after the motion in arrest had been filed would have been tantamount to abrogation by that court of the long line of cases cited in the principal opinion and the rule established by them. This it could not do. And in asking this court to search the record for error and to order a new trial on its own motion, they overlook the rule that this Court will search the record only to affirm, and not to reverse.

Appellants independently assigned as error that the rendition of any judgment against the union defendants

deny them due process of law under the Federal and State constitutions and say we failed to rule upon that assignment. This constitutional question cannot be raised by independent assignment of error. It must have been raised in the trial court and brought to us in connection with some ruling of the trial court involving the question. *Alderson* v. *State* (1929), 201 Ind. 359, 361, 362, 168 N. E. 481; *Pittsburgh, etc., R. Co.* v. *Town of Wolcott* (1904), 162 Ind. 399, 401, 69 N. E. 451; *Standish* v. *Bridgewater* (1902), 159 Ind. 386, 387, 65 N. E. 189.

The petition for rehearing is denied.

Gilkison and Emmert, J. J., dissent.

NOTE.—Reported in 73 N. E. (2d) 749.